**In the Matter of Lloyd James DURENSKY, Bankrupt.**

**UNITED STATES of America, Appellant,**

v.

**Lloyd James DURENSKY, Appellee.**

No. 74–3038.

United States Court of Appeals, Fifth Circuit.

Sept. 18, 1975.

Frank D. McCown, U. S. Atty., Roger J. Allen, Asst. U. S. Atty., Ft. Worth, Tex., Scott P. Crampton, Asst. Atty.

Gen., Gilbert E. Andrews, Acting Chief, Appellate Sec., Crombie J. D. Garrett, Karl Schmeidler, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellant.

John C. Moran, Oklahoma City, Okl., for appellee.

Before GOLDBERG, CLARK and GEE, Circuit Judges.

GOLDBERG, Circuit Judge:

The United States initiated this appeal in the hope of persuading this Court to rule that bankruptcy courts have no jurisdiction, either under section 2a of the Bankruptcy Act [the Act], 11 U.S.C. § 11(a),[1] or otherwise, to determine the amount and legality of federal taxes due and owing by a bankrupt or to determine the liability of the bankrupt therefor, where the United States has filed no claim in the bankruptcy proceeding. The bankruptcy judge to whom this argument was made below rejected the Government's objection to his jurisdiction over this matter. On review, the district court was of the opinion that the Government's position was an incorrect one, but concomitantly concluded that its appeal was premature. 377 F.Supp. 798. We agree with the latter conclusion and so find no occasion to decide the extent of the bankruptcy court's jurisdiction in cases involving the potential federal tax liability of bankrupts.[2] We dismiss the appeal.

---

1. Section 2a provides that courts of bankruptcy are invested with jurisdiction to:

(2A) Hear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction . . . . (12) Discharge or refuse to discharge bankrupts, set aside discharges, determine the dischargeability of debts, and render judgments thereon
. . . .

2. We note that the Eighth and Ninth Circuits, both relying heavily on the district court's opinion in the instant case, have recently decided that bankruptcy courts possess jurisdiction under section 2a(2A) to entertain applications such as that of Durensky here. In re Bostwick, 8 Cir. 1975, 521 F.2d 741; In re Gwilliam, 9 Cir. 1975, 519 F.2d 407. See In re Murphy, N.D.Ala.1974, 381 F.Supp. 813, 816; In re Savage, C.D.Cal.1971, 329 F.Supp. 968, 969; see also Plumb, The Tax Recommendations of the Commission on the Bankruptcy Laws—Tax Procedures, 88 Harv.L.Rev. 1360, 1389–99 (1975); Plumb, The Tax Recommendations of the Commission on the Bankruptcy Laws—Priority and Dischargeability of Tax Claims, 59 Cornell L.Rev. 991, 1050–54 (1974); 9 Mertens, Law of Income Taxation, § 54.03; but see In re Zook, C.D.Cal.1974, 74–1 U.S. Tax Cas. ¶ 9399; In re O'Ffill, D.Kan.1973, 368 F.Supp. 345, 351.

**1026**

Lloyd James Durensky filed a voluntary petition in bankruptcy on February 25, 1972, naming the United States as a creditor by virtue of approximately $90,-000 in income taxes alleged to be due and owing for the years 1964 and 1965. The Government was duly notified of the First Meeting of Creditors and was further informed that the bankruptcy court had set May 22, 1972, as the last day for filing objections to Durensky's discharge and for filing applications pursuant to section 17c(2) of the Act, 11 U.S.C. § 35(c)(2),[3] to determine the dischargeability of debts claimed to be non-dischargeable under the Act. The Government, however, neither filed a proof of claim nor participated in any way in the bankruptcy proceedings. On May 25, 1972, the bankruptcy court entered an order granting Durensky a discharge of his debts.

While Durensky was being absolved of his debts and given a fresh fiscal start, the Internal Revenue Service was completing its slow but inexorable investigation of the bankrupt's potential tax liability. On August 8, 1972, the IRS finally concluded that Durensky did in fact owe the Government $90,000 in income taxes for 1964 and 1965, and so presented him with a Final Notice Before Seizure, demanding payment. Durensky responded to this sudden demonstration of interest by returning to the bankruptcy court and filing an application to determine the dischargeability of his tax debts, pursuant to section 17c(1) of the Act. The bankruptcy judge issued a temporary restraining order on August 14, restraining the Government from seizing any of Durensky's property pending a hearing on the merits of the dispute.[4] The Government immediately objected to the bankruptcy court's jurisdiction over this tax controversy, on the ground that the Government had not filed a proof of claim in the prior proceedings. After a lengthy delay, the bankruptcy judge held a hearing on the Government's motion to dismiss Durensky's application, and on December 21, 1973, the judge entered an order denying the Government's motion and setting a date for a hearing on the merits of the dischargeability issue. The Government chose to appeal this order to the district court, in accordance with section 2a(10)

We note also that the orders reviewed in *Bostwick* and *Gwilliam* arose in different procedural contexts than the instant order, so that the Eighth and Ninth Circuits did not encounter the difficulty that we must resolve here. In *Gwilliam*, the bankruptcy judge concluded not only that he had jurisdiction to determine the dischargeability of the bankrupt's tax liabilities, but also that those liabilities were in fact discharged; the district court reversed the order of the bankruptcy judge on the ground of want of jurisdiction, and it was that order which the Ninth Circuit reviewed. In *Bostwick*, as in this case, the bankruptcy judge concluded only that he had jurisdiction over the matter and enjoined the Government from proceeding against the bankrupt pending a hearing on the question of dischargeability. Upon review, however, the district court affirmed the bankruptcy judge's order instead of concluding, as did the district court here, that the Government's petition for review was premature. The Eighth Circuit did not discuss the appealability issue, although it obviously had read Judge Mahon's discussion of the problem in his opinion below in this case. We cannot say whether the Eighth Circuit implicitly drew some significant procedural distinction between their case and this one, or whether that Court decided *sub silentio* to adopt a rule regarding the appealability of interlocutory orders in proceedings in bankruptcy which differs from that followed by this Court. *See* n. 7, *infra*. In either case, we do not believe that the *Bostwick* Court's decision to address the merits of the Government's jurisdictional claims can bind this Court on an issue which apparently was not raised there, and which certainly was not discussed there.

**3.** Section 17c provides, in pertinent part, that:

(1) The bankrupt or any creditor may file an application with the court for the determination of the dischargeability of any debt.

(2) A creditor who contends that his debt is not discharged under clause (2), (4), or (8) of subdivision (a) of this section must file an application for a determination of dischargeability within the time fixed by the court . . . and, unless an application is timely filed, the debt shall be discharged. . . .

**4.** After a hearing on August 23, 1972, the TRO was converted into a temporary injunction on the same terms.

of the Act, 11 U.S.C. § 11(a)(10).[5] On May 28, 1974, after an extensive and thoughtful discussion of the jurisdiction of bankruptcy courts in tax controversies, the district court concluded that regardless of the strength of the Government's jurisdictional contentions, its appeal of the interlocutory order denying its motion to dismiss was "premature and piecemeal." 377 F.Supp. at 805–06. Accordingly, the court remanded the case to the bankruptcy judge for a hearing on the merits.

■ Although the district court is a "bankruptcy court," 11 U.S.C. § 1(10), endowed with a broad power to review and modify the actions of bankruptcy judges, see n. 5, supra, this Court can exercise only a general appellate review in bankruptcy matters. Willyerd v. Buildex Co., 6 Cir. 1972, 463 F.2d 996, 1001 n. 1; 2 Collier, Bankruptcy ¶ 24.05[1] (14th ed. rev. 1975). Our power of review is conferred by section 24a of the Act, 11 U.S.C. § 47(a):

> The United States courts of appeals . . . are invested with appellate jurisdiction from the several courts of bankruptcy in their respective jurisdictions in proceedings in bankruptcy, either interlocutory or final, and in controversies arising in proceedings in bankruptcy, to review, affirm, revise, or reverse, both in matters of law and in matters of fact: Provided, however, That the jurisdiction upon appeal from a judgment on a verdict rendered by a jury shall extend to matters of law only: And provided further, That when any order, decree, or judgment involves less than $500, an appeal therefrom may be taken only upon allowance of the appellate court.

■ Section 24a thus distinguishes between "proceedings in bankruptcy" and "controversies arising in proceedings in bankruptcy;" appeals may be taken as of right from either interlocutory or final orders in the former type of matter, but only from final orders in the latter variety. Diamond Door Co. v. Lane-Stanton Lumber Co., 9 Cir. 1974, 505 F.2d 1199, 1203; In re Charmar Investment Co., 6 Cir. 1973, 475 F.2d 560, 563, cert. denied sub nom. Charmar Investment Co. v. City National Bank & Trust Co., 414 U.S. 823, 94 S.Ct. 123, 38 L.Ed.2d 56. Unfortunately, the distinction between "proceedings" and "controversies" has long eluded concise and easily ascertainable definition, so that the courts have adopted what is tantamount to a case-by-case approach for the classification of particular disputes. See Texas & N.O.R. Co., 5 Cir. 1954, 211 F.2d 419, 421–22, cert. denied, 1955, 348 U.S. 913, 75 S.Ct. 293, 99 L.Ed. 716; United Kingdom Mutual S.S. Assur. Assoc. v. Liman, 2 Cir. 1969, 418 F.2d 9, 10. As a general rule, "proceedings" are those matters of an administrative character, including questions between the bankrupt and his creditors which are presented in the ordinary course of the administration of the bankrupt's estate. "Controversies," on the other hand, are usually described as matters which arise in the course of the bankruptcy proceedings and which are not mere steps in the ordinary administration of the bankrupt, but which present distinct and separable issues between the trustee and adverse claimants concerning the right and title to the bankrupt's estate. See Taylor v. Voss, 1926, 271 U.S. 176, 180–81, 46 S.Ct. 461, 463, 70 L.Ed. 889, 892; In re Merle's, Inc., 9 Cir. 1973, 481 F.2d 1016,

---

**5.** Section 2a provides, in pertinent part, that:

The courts of the United States hereinbefore defined as courts of bankruptcy are hereby created courts of bankruptcy and are hereby invested . . . with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this title . . . to—

. . . . .

(10) Consider records, findings, and orders certified to the judges by referees, and confirm, modify, or reverse such findings and

orders, or return such records with instructions for further proceedings . . . . .

Bankruptcy Rule 810 provides that:

Upon an appeal the district court may affirm, modify, or reverse a referee's judgment or order, or remand with instructions for further proceedings. The court shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge of the credibility of the witnesses.

1018; *United Kingdom Mutual S.S. Assur. Assoc. v. Liman, supra,* 418 F.2d at 10; 2 Collier, *supra,* ¶¶ 24.12–24.36. Another approach to the elusive distinction was taken in *United Kingdom Mutual,* where the Second Circuit attempted to differentiate the two types of matters by reasoning that a proceeding contains a "controversy" if the matter involves a claimant "[who] raises a dispute with regard to the propriety of including property in the estate for distribution, rather than a question with regard to the administration of the estate once it is amassed." 418 F.2d at 10.

■ Although we have been unable to discover any instance in which a section 17c(1) application such as that filed by Durensky here has been denominated either "proceeding" or "controversy," [6] we believe that it is a clear as anything can be in this terminological morass that the instant case constitutes a "proceeding." If we scrutinize the application for a determination of the dischargeability of a debt for evidence of the common characteristics of a "proceeding," we find that the section 17c(1) motion begins as a proceeding, that is, by an application by the bankrupt as to which the bankruptcy court applies its summary procedures. It is also true that such a motion occurs in the ordinary course of the bankruptcy proceedings, in that it is an integral—although not inevitable—part of bankruptcy adjudications. Finally, if we apply either the traditional definition of "controversy" or that proposed in *United Kingdom Mutual,* we think it apparent that the Government has not challenged the right and title to any part of the bankrupt's estate as it existed before discharge, nor has the Government questioned the propriety of the inclusion of any particular property in the estate; rather, the Government contends that Durensky's discharge has had no effect upon his tax liability.

■ The denial of a motion to dismiss for lack of jurisdiction is an interlocutory order which is not ordinarily appeala-

ble under the "final judgment" rule of 28 U.S.C. § 1291. *See Catlin v. United States,* 1945, 324 U.S. 229, 236, 65 S.Ct. 631, 635, 89 L.Ed. 911, 917–18; *Wallace v. Norman Industries, Inc.,* 5 Cir. 1972, 467 F.2d 824, 825; *Connell v. Dulien Steel Products, Inc.,* 5 Cir. 1957, 240 F.2d 414, 415, *cert. denied,* 356 U.S. 968, 78 S.Ct. 1008, 2 L.Ed.2d 1074. We have seen, however, that section 24a of the Bankruptcy Act departs from the general rule and affords appeals as of right from both interlocutory and final orders in proceedings in bankruptcy. It might appear, therefore, that the district court's order of remand in the instant case—with its concomitant refusal to reverse the bankruptcy judge's denial of the Government's motion to dismiss— would surely be an appealable order in view of our determination that this case is a proceeding in bankruptcy. Such a sweeping conclusion would be ill-advised however, for the courts of appeals have interpreted section 24a so as to allow appeals from interlocutory orders in proceedings only when the orders dispose of some right or duty asserted by one of the parties. *See, e. g., City of Fort Lauderdale v. Freeman,* 5 Cir. 1952, 197 F.2d 122, 124; *Sherr v. Sierra Trading Corp.,* 10 Cir. 1974, 492 F.2d 971, 975; *In re Charmar Investment Co., supra,* 475 F.2d at 563; *Cope v. Aetna Finance Co.,* 1 Cir. 1969, 412 F.2d 635, 639; *Dubnoff v. Goldstein,* 2 Cir. 1967, 385 F.2d 717, 722; *Carolina Mills v. Corry,* 4 Cir. 1953, 206 F.2d 76, 77; *In re Chicago Rapid Transit Co.,* 7 Cir. 1953, 200 F.2d 341, 342.

The obvious explanation for this judicial gloss on the statutory language is that if every word issuing from the bankruptcy judge's mouth or pen were to be a proper subject for immediate review by the district court and the court of appeals, bankruptcy proceedings would cease to offer a reasonably swift resolution of pressing economic difficulties. *See Georgia Jewelers, Inc. v. Bulova Watch Co.,* 5 Cir. 1962, 302 F.2d 362, 364; 9 Moore's Federal Practice ¶ 110.-

---

**6.** Congress created the section 17c(1) procedure by the Act of October 19, 1970, Pub.L. 91–467 § 7, 84 Stat. 992.

19[5]; *see also Digital Data Systems, Inc. v. Carpenter,* 5 Cir. 1967, 387 F.2d 529, 533. This Court has consistently ruled that in order for an interlocutory order in a bankruptcy proceeding to be appealable as of right, it must possess a "definitive operative finality." *In re Wingreen Co.,* 5 Cir. 1969, 412 F.2d 1048, 1050; *Georgia Jewelers, Inc. v. Bulova Watch Co., supra,* 302 F.2d at 364; *cf. In re Transystems, Inc.,* 5 Cir. 1974, 499 F.2d 416.[7]

■■ We do not believe that the order under consideration here has any such "definitive operative finality." We are presented with a district court's order of remand to the bankruptcy judge after a refusal to reverse that judge's refusal to dismiss Durensky's application for lack of jurisdiction; upon remand, the bankruptcy judge would presumably hold the hearing on the merits of Durensky's claim of discharge that has been delayed for over two years since the filing of the bankrupt's section 17c(1) application. The very description of the order and the chronological results of the Government's attempts to appeal therefrom indicate that this order ought not to be reviewable at this time.[8] An order denying a motion to dismiss for lack of jurisdiction is perhaps unique in its incapacity permanently to affect the rights of the moving party, for jurisdictional defects may be recognized by a court at any time, on the motion of the parties or on its own motion. *See American Fire & Cas. Co. v. Finn,* 1951, 341 U.S. 6, 17–18, 71 S.Ct. 534, 541–42, 95 L.Ed. 702, 710–11; *Mansfield, Coldwater & Lake Michigan Ry. v. Swan,* 1884, 111 U.S. 379, 382–83, 4 S.Ct. 510, 511–12, 28 L.Ed. 462, 464. It is therefore possible—although not likely—that on remand the bankruptcy judge will think better of his assertion of jurisdiction and dismiss Durensky's application, or that upon a review of the bankruptcy judge's decision on the merits, the district court will reconsider its position on the matter. It was this inherent tentativity in the bankruptcy judge's order that caused the district court to conclude that a review of that order should await a decision on the merits of the controversy. 377 F.Supp. at 805–806. We have discovered no circumstances which would compel a different disposition of the appeal in this court.[9]

7. We note that the Tenth Circuit interprets its statutory duty to entertain interlocutory appeals from bankruptcy proceedings in a manner which renders more orders appealable than is the rule in this Court or in the Second Circuit. *Compare Sherr v. Sierra Trading Corp.,* 10 Cir. 1974, 492 F.2d 971, 975, *and United States v. Allen,* 10 Cir. 1968, 395 F.2d 752, *with Georgia Jewelers, Inc. v. Bulova Watch Co.,* 5 Cir. 1962, 302 F.2d 362, 364, *and Rosen v. Sugarman,* 2 Cir. 1966, 357 F.2d 794, 796.

8. It might be argued that our concern with the swift resolution of bankruptcy matters should persuade us to determine the merits of the Government's jurisdictional contentions at this time, rather than to postpone such a resolution until after a hearing on the issue of the dischargeability of Durensky's tax liabilities. Although there might be a considerable practical advantage in such a decision, the fact of the matter is that "the judicial power of the United States must not be exerted in a case to which it does not extend, even if both parties wish to have it exerted." *Mansfield, Coldwater & Lake Michigan Ry. v. Swan,* 1884, 111 U.S. 379, 384, 4 S.Ct. 510, 511–12, 28 L.Ed. 462, 464; *Cutler v. Rae,* 1849, 48 U.S. (7 How.) 729, 731, 12 L.Ed. 890, 891.

9. The Government suggests that *In re TMT Trailer Ferry, Inc.,* 5 Cir. 1970, 434 F.2d 804, *cert. denied sub nom. Kirkland v. Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc.,* 1971, 402 U.S. 907, 91 S.Ct. 1378, 28 L.Ed. 648, and *In re Wingreen Co., supra,* stand for the proposition that where a bankruptcy court overrules an objection to its jurisdiction and then sets the matter down for a hearing on the merits, the order is considered to have sufficient operative finality and not be confined to trivial matters, so that an appeal may be taken as of right from such an order. A cursory reading of *TMT Trailer Ferry* reveals, however, that in that case the district court, sitting as a reorganization court, pursuant to Chapter X order of the Bankruptcy Act, 11 U.S.C. § 501, et seq., refused, among other things, to issue a protective order against the taking of depositions from certain parties, who then appealed; we concluded that the district court's order was appealable as of right and that certain of the appellants' actions did not estop them from pursuing their right of appeal in this Court. *See generally* Farrar, the Appealability as of Right of Interlocutory Discovery Orders in Bankruptcy Proceedings, 23 U.Miami L.Rev. 366 (1969). In *Wingreen,* the district court, sitting as a reorganization court,

In conclusion, we hold that the interlocutory order under consideration here, although entered in a proceeding in bankruptcy, lacks that "definitive operative finality" necessary to render it appealable as of right under section 24a of the Bankruptcy Act. Although the Government's challenge to the bankruptcy court's jurisdiction is certainly not a frivolous one and would constitute a question of first impression in this Circuit, the long procedural history of this case demonstrates why review by this Court at this time would be at war with the policy against piecemeal appeals which underlies federal jurisprudence and the policy of expedited adjudication which undergirds federal bankruptcy law.

Appeal dismissed.

not only asserted its jurisdiction over the Internal Revenue Service, but also issued a writ of mandamus ordering the IRS to audit the debtor's books and draw certain factual and

legal conclusions therefrom. This Court neither said nor did anything in either case to support the Government's position here.