**In the Matter of Edward G. BRISSETTE, Gene Paul Master, Michael Anthony Simon, Bankrupts-Appellants.**

No. 75–3288.

United States Court of Appeals, Ninth Circuit.

Sept. 23, 1977.

Rehearing Denied Nov. 25, 1977.

Barry Wolf, California Indian Legal Services, Eureka, Cal., argued for appellant.

Philip M. Arnot, Eureka, Cal., argued for appellee.

Ann Broadwell, Thomas R. Adams, Charles P. Gillet, Daly City, Cal., for The Legal Aid Society of San Mateo County, amicus curiae on behalf of bankrupts-appellants.

Before HUFSTEDLER, GOODWIN, and ANDERSON, Circuit Judges.

HUFSTEDLER, Circuit Judge.

This appeal presents questions of first impression in the administration of the Bankruptcy Act, concerning the interplay between the exempt property provisions of Section 6 of the Bankruptcy Act (11 U.S.C. § 24 (1971)), the wage garnishment restrictions of the Consumer Credit Protection Act (15 U.S.C. §§ 1671–77 (1971)), and the wage exemption provisions of the California law applicable to these bankrupts (Cal.Code Civ. Proc. § 690.6 (West Supp.1977)). After disposing of a threshold jurisdictional issue, we conclude that the Consumer Credit Protection Act ("CCPA") does not itself create an exemption within the meaning of the Bankruptcy Act, but that by reason of its incorporation by California's exemption statute, which, in turn, is adopted by the Bankruptcy Act, it becomes an exemption measure, with the result that 75 percent of appellants' wages are exempt from their creditors. In this appeal, each bankrupt requests that 75 percent of his wages earned but unpaid prior to the filing of the bankruptcy petition be deemed exempt property not subject to become part of the bankruptcy estate, pursuant to Section 6 of the Bankruptcy Act. (See Bankruptcy Rule 403; Bankruptcy Act § 70(a)(5), 11 U.S.C. § 110(a)(5) (1971).) The trustee exempted 50 percent of such wages, rather than 75 percent in his report of exempt property. The district court affirmed the trustee's determination that only 50 percent of the wages were exempt property within the meaning of Section 6. As the sums involved amount to less than $500, appellants duly requested and were granted leave to appeal to this court. (Id. § 47(a); Rule 6, Fed.Rules of App.Proc.[1]) We also granted leave to appeal in forma pauperis.

I

◼ We must first decide whether the district court's order is appealable under

---

$75. The respective amounts in issue (25 percent of the foregoing) are $38, $45, and $18.75.

Section 24(a) of the Bankruptcy Act (11 U.S.C. § 47(a) (1971)). Interlocutory orders are appealable under this section only if they arise in "proceedings in bankruptcy" and not if they arise in "controversies" in proceedings in bankruptcy.[2] (*Young Properties Corp. v. United Equity Corp.* (9th Cir. 1976) 534 F.2d 847, 849–51; *In re Durensky* (5th Cir. 1975) 519 F.2d 1024, 1027–28; *United Kingdom Mutual Steamship Assurance Assoc. v. Liman* (2d Cir. 1969) 418 F.2d 9, 9–10 [hereinafter cited as "*United Kingdom Mutual*"]. *See generally* 9 Moore's Federal Practice ¶ 110.19[5], at 222–271 (2d ed. 1975); 2 Collier on Bankruptcy ¶ 24.-11–.39, at 733 *et seq.* (14th ed. 1976).) Although it is generally assumed that exemption determinations arise in proceedings and appellees do not contest the point, there is no recent authority for this proposition. (*But see Young Properties Corp., supra,* 534 F.2d at 853 (*citing* Collier). *See also Lines v. Fredrick* (1970) 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124; *In re Cummings* (10th Cir. 1969) 413 F.2d 1281; *In re Aveni* (6th Cir. 1972) 458 F.2d 972 (all reaching the merits in interlocutory appeals of exemption disputes without addressing jurisdictional question).) Moreover, the frequently cited general rule respecting controversies is that they involve disputes "with regard to the propriety of including property in the estate for distribution, rather than a question with regard to the administration of the estate once it is amassed." (*United Kingdom Mutual, supra,* 418 F.2d at 10; *Taylor v. Voss* (1926) 271 U.S. 176, 181–82, 46 S.Ct. 461, 70 L.Ed. 889.) While this language usually appears in the context of trustee disputes with creditors, exemption disputes similarly involve "quarrels about what belongs in the bankrupt estate." (*See* 9 Moore, *supra,* at 225; *Young Properties Corp., supra,* 534 F.2d at 853; *In re Merle's, Inc.* (9th Cir. 1973) 481 F.2d 1016, 1018. *See also Cope v. Aetna Finance Company of Maine* (1st Cir. 1969) 412 F.2d 635, 638–39 n. 9; *In re Christ's Church of the Golden Rule* (9th Cir.

1949) 172 F.2d 523, 524; *In re National Finance & Mortgage Corp.* (9th Cir. 1938) 96 F.2d 74, 75–76.) These broad statements do not truly reflect the vagaries of the cases which are "difficult, if not impossible to reconcile in principle." (*United Kingdom Mutual, supra,* 418 F.2d at 11.)

■ The distinction between "proceedings" and "controversies" in Section 24(a) is obscure and indefensibly confusing. (*See generally* 2 Collier, *supra,* ¶¶ 24.03–.04, .08, .11–.36; 9 Moore, *supra,* ¶ 110.19[5]. *See also United Kingdom Mutual, supra,* 418 F.2d at 10; *In re Imperial "400" National, Inc.* (3rd Cir. 1968) 391 F.2d 163, 168.) Problems in the area are exacerbated by continuing reliance on case law construing identical terms under pre-1938 jurisdictional statutes. (*See* 2 Collier, *supra,* ¶ 24.11, at 736–36.1 (earlier case law authoritative as to § 24) and ¶ 24.17, at 742–43 (*citing* all pre-1938 cases for proposition exemption disputes are proceedings). *But see* 9 Moore, *supra,* at 223 n. 4.) Not only was the earlier law chaotic (*see* 2 Collier, *supra,* ¶¶ 24.03[5]–.04[1], at 706–13 (observations of § 24's draftsmen); *Taylor v. Voss, supra,* 271 U.S. at 180, 46 S.Ct. 461), but construction of the prior terms led to dramatically different consequences. Under the earlier statutes, the more liberal rights of appeal adhered to "controversies" (appealable as of right and as to matters of law and fact (*id.* at 180–82, 46 S.Ct. 461)), while "proceedings," even after final judgment, were appealable only by permission of the courts of appeals and only as to matters of law. (*Id.* at 181, 46 S.Ct. 461; 2 Collier, *supra,* ¶ 24.11[2], at 733–34 (discussing statutory exceptions not relevant here). *See also In re Christ's Church of the Golden Rule, supra,* 172 F.2d at 524.)

Earlier case law does not help us to interpret Section 24(a), which not only gave appeals from final judgments in proceedings

---

**2.** Interlocutory appeals from controversies may be appealable in some cases pursuant to 28 U.S.C. § 1292 (1971). (*See* 9 Moore, *supra,* at 225–26 n. 7.) This appeal does not satisfy that provision.

the same status as controversies on appeal,[3] but also liberalized the opportunity for appellate review of proceedings by making it available on an interlocutory basis. (*Cf. id.*) The relevant criteria in deciding whether a dispute is a proceeding or a controversy must be directly related to its special effects on the administration of the Bankruptcy Act and to its special demands on appellate court resources.[4]

The esoteric draftsmanship of Section 24(a) does not completely obscure the draftsmen's intent that decisions involving interpretation of fundamental provisions of the Bankruptcy Act should be subject to interlocutory appeal. Due to the peculiar nature of bankruptcy proceedings, certain interlocutory decisions may effectively determine the ultimate outcome or finally resolve rights and duties of parties in a manner not susceptible to meaningful review on appeal from the final judgment. (*See Cohen v. Beneficial Loan Corp.* (1949) 337 U.S. 541, 545–47, 69 S.Ct. 1221, 93 L.Ed. 1528.) Prompt review expedites the ultimate resolution of the proceeding and serves the interests of all participants by eliminating unnecessary and repetitious proceedings. Resolution of such issues will often wind up the entire litigation. If these consequences do not flow from permitting an interlocutory appeal, appeals in this field should be as firmly restricted as those in other kinds of civil litigation. Appealability thus turns on a sensitive examination of the legal issues involved, the impact of the decision on future bankruptcy administration, the need for interlocutory review and its practical utility.

■ The instant case involves a basic question of interpretation of Section 6 of the Bankruptcy Act. In contrast, disputes between trustees and third parties over title to assets typically involve the property and procedural law of creditors' rights, which are entwined in the bankruptcy proceeding only because the erstwhile debtor has become a bankrupt and the trustee has succeeded to his rights. (*See United Kingdom Mutual, supra,* 418 F.2d at 10 (controversies involve legal issues "distinct and separable" from Bankruptcy Act); *In re National Finance & Mortgage Corp., supra,* 96 F.2d at 75 (controversy where creditor relies on right which is hostile to the trustee or bankruptcy jurisdiction).) When such disputes arise outside the bankruptcy court, they are subject to ordinary rules respecting interlocutory appeals. (*See* 9 Moore, *supra,* at 227.) They should not be treated differently merely because they arise within the bankruptcy proceeding.

Decisions about the status of exempt property can, and frequently do, determine the entire course of the bankruptcy proceeding. Disputes over exemptions integrally affect the administration process, and are therefore among the issues that are contemplated by Section 24(a)'s exception to the final judgment rule. (*See In re Durensky, supra,* 519 F.2d at 1028 (application by bankrupt as to which bankruptcy court exercised summary judgment and which involved steps integral to bankruptcy adjudication held proceeding).)

A decision that property is exempt may so deplete the potential estate that creditors will decline to participate further in the proceeding; a decision that it is not exempt will cause title to it to vest in the trustee during the pendency of the action, with all the attendant consequences of vesting. Although the exemption decision is technically interlocutory, it is frequently the final resolution of the rights of the parties for practical purposes. Erroneous determinations that property is nonexempt encourage cred-

---

**3.** Both are appealable as of right except where the amount in controversy is less than $500, in which case permission of the court of appeals must be obtained. (*See* discussion in text at note 1, *supra.*)

**4.** Matters deemed "proceedings" under the old statutes often involved trivial matters and courts accordingly restricted them by adding the jurisdictional hurdle that such disputes must involve an exercise of judicial power which finally resolves a right or duty of a party, even if they arose in "proceedings." (*See In re Durensky, supra,* 519 F.2d at 1028–30; *Sherr v. Sierra Trading Corp.* (10th Cir. 1974) 492 F.2d 971, 975; *In re Charmar Investment Co.* (6th Cir. 1972) 475 F.2d 560, 562–63; 9 Moore, *supra,* at 226–27; 2 Collier, *supra,* ⌐ 24.39[1] at 795–803.)

itors to press claims and to divide assets only to be told on appeal that there is nothing to divide. Of greater moment, however, the bankrupt may be thereby deprived of the necessities of life which Section 6 was designed to preserve to him during the pendency of the action. On the other hand, an erroneous decision of exemption will leave property in the hands of the bankrupt and subject to dissipation without the appropriate satisfaction of any creditor. Exemption disputes, therefore, are akin to other "proceedings" in which interlocutory review eliminates unnecessary litigation. (*See Theard v. Fidelity & Deposit Co. of Maryland* (5th Cir. 1953) 202 F.2d 880, 881–82 (motion to dismiss petition); *Diamond Door Co. v. Lane-Stanton Lumber Co.* (9th Cir. 1974) 505 F.2d 1199; *In re Charmar Investment Co.* (6th Cir. 1972) 475 F.2d 560 (disputes about whether act of bankruptcy was committed).) Exemption disputes are not like controversies involving the trustee and creditors which can be effectively resolved on appeal from the final judgment. (*See, e. g., In re Merle's, Inc., supra,* 481 F.2d at 1018 (order disapproving order of compromise giving property to third party held controversy; creditor's remedy is to remain as participant in bankruptcy adjudication).)

Applying the criteria which we have earlier described, we conclude that exemption disputes are proceedings in bankruptcy from which interlocutory appeals may be taken pursuant to Section 24(a), and we have jurisdiction of this appeal.

## II

All parties concede that wages earned but unpaid prior to filing the petition are transferable property of the bankrupt. (*See In re Aveni, supra,* 458 F.2d at 973–74 (non-exempt wages are property passing to trustee); *see also* 4A Collier on Bankruptcy ¶ 70.34, at 447–448.1 & nn. 4–5.) The issue

is whether any portion of these wages is exempt property within the meaning of Section 70(a) of the Bankruptcy Act (11 U.S.C. § 110(a). ("The trustee of the estate of a bankrupt . . . shall . . . be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition . . . except insofar as it is to property which is held to be exempt, to all of the following kinds of property . . (5) property . . . which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded or sequestered . . . .").) [5]

Rather than listing specific exemptions within the Bankruptcy Act itself, Section 6 of the Act provides that bankrupts shall be allowed "the exemptions which are prescribed by the laws of the United States or by the State laws in force at the time of the filing of the petition in the State wherein they have had their domicile for the six months immediately preceding the filing of the petition . . . ." (11 U.S.C. § 24.)

The federal and state statutes to which Section 6 refers do not officially purport to be bankruptcy exemptions. Rather, they are statutes designed to protect certain kinds of the debtors' assets from attachment or execution by their creditors in ordinary judicial proceedings to collect debts. By incorporating those statutes, the Bankruptcy Act prevents creditors from being in any better position to reach a debtor's assets upon bankruptcy than they would have been in a non-bankruptcy setting. (*Holden v. Stratton* (1905) 198 U.S. 202, 214, 25 S.Ct. 656, 49 L.Ed. 1018; *Smalley v. Langenour* (1905) 196 U.S. 93, 97, 25 S.Ct. 216, 217, 49 L.Ed. 400 ("The rights of a bankrupt to property as exempt are those given him by the state statutes, and if such exempt property is not subject to levy and

---

**5.** In California, earned but unpaid wages are property which could have been "transferred," *see* Section 70(a)(5) (first clause), by a written assignment which conforms to statutory requirements. (Cal. Labor Code § 300 (West Supp.1977).) Hence it is unnecessary to con-

sider whether California's exemption of a portion of wages from levy and sale under judicial process in Cal.Code Civ.Proc. § 690.6 (West Supp.1977) operates to remove it from the definition of property under Section 70(a)(5)'s second clause.

sale under those statutes, then it cannot be made to respond under the act of Congress.").)

Federal law supplies few exemption statutes. The primary source of bankruptcy exemptions under Section 6 is state law, which varies widely from state to state. The result is that bankrupts are given uniform treatment within states, but great disparities exist among bankrupts in different states. (*See generally* 1A Collier on Bankruptcy ¶ 6.02, at 795–96; Vukowich, The Bankruptcy Commission's Proposal Regarding Bankrupt's Exemption Rights, 63 Cal.L.Rev. 1439 (1975).)

■ Appellants argue that 75 percent of their wages are exempt because (1) the federal Consumer Credit Protection Act, which exempts at least 75 percent of wages from garnishment, is an exemption law within the meaning of Section 6, and (2) the California statute, Section 690.6 of the California Code of Civil Procedure, exempting certain earnings from execution, is an exemption statute within the meaning of Section 6, and the California statute adopts the provisions of the CCPA. We reject the former argument on the basis of *Kokoszka v. Belford* (1974) 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374. We agree with the appellants, however, that a similar result is reached by an entirely different route by reason of the California statute's incorporation of the CCPA, and, in turn, the Bankruptcy Act's adoption of the California statute.

The CCPA provides that a maximum of 25 percent of a wage earner's disposable earnings [6] may be subjected to garnishment by his creditors (15 U.S.C. § 1673(a)) and that "[n]o court of the United States or any State may make, execute, or enforce any order or process in violation of this section." (*Id.* § 1673(c).) Garnishment is defined as "any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt." (*Id.* § 1672(c).)

In *Kokoszka v. Belford, supra,* the Supreme Court discussed the relationship of these provisions to Section 6 exemptions in some detail. The Court there held that income tax refunds were property of the bankrupt for purposes of Section 70(a)(5) and that no part of the refunds was exempt for Section 6 purposes by reason of the CCPA.[7] (417 U.S. at 648, 651–52, 94 S.Ct. 2431.) However, the decision in *Kokoszka* was predicated on the Court's finding that income tax refunds were not "earnings" of the bankrupt within the meaning of 15 U.S.C. § 1672(c) (417 U.S. at 651, 94 S.Ct. 2431), and thus were not the type of property protected by the anti-garnishment provisions. Appellants here point out that the wages in question do constitute "earnings" of the periodic quality the CCPA was intended to protect (*see id.*, 95 S.Ct. 2431), and would have this court distinguish *Kokoszka* on that basis.[8] While the *Kokoszka*

---

**6.** The maximum amount which may be garnished is 25 percent of disposable income or "the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage  .  .  whichever is less." (15 U.S.C. § 1673(a) (1971).) The second clause means that less than 25 percent will be garnishable for workers paid less than the minimum wage. Disposable income is defined in the statute as that remaining after the deduction of amounts which are legally required to be withheld, such as taxes and social security contributions. (*Id.* § 1672(b).)

**7.** The decision did not discuss, but impliedly overruled, contrary precedent in this circuit. *See In re Cedor* (N.D.Cal.1972) 337 F.Supp. 1103, *aff'd* (9th Cir. 1972) 470 F.2d 996. *Cedor* had a companion case which had reached a result similar to *Kokoszka* and was reversed on

the lower court's opinion in *Cedor, In re Kingswood* (9th Cir. 1972) 470 F.2d 996, *reversing* 343 F.Supp. 498 (C.D.Cal.1972). The Supreme Court vacated the judgment in *Kingswood,* remanding it for reconsideration in the light of *Kokoszka* (1974) 418 U.S. 902, 94 S.Ct. 3191, 41 L.Ed.2d 1150; on remand (9th Cir. 1974) 504 F.2d 1108 (remanding to the district court for further proceedings not inconsistent with *Kokoszka*). Thus, *Cedor* is clearly disapproved.

**8.** The square holding in *Kokoszka* was that the CCPA does not protect income tax refunds from garnishment of any sort. The Court thus did not have to reach the argument of appellants there that the passing of title to the trustee pursuant to Section 70(a)(5) constituted a "garnishment" within the meaning of the CCPA. (15 U.S.C. § 1672(c). *See* 417 U.S. at

Court did not directly hold that the CCPA is not a federal bankruptcy exemption statute, such a conclusion is compelled by its reasoning and by the legislative history of the CCPA there discussed.

The Court noted that the CCPA's garnishment limitations were enacted with a full awareness of the Bankruptcy Act and in reliance upon the congressional power to enact uniform bankruptcy laws. (*Id.* at 650, 95 S.Ct. 2431; 15 U.S.C. § 1671(b).) There is no indication, however, in the statute or the legislative history that Congress intended that the CCPA protections apply as bankruptcy exemptions.[9] (417 U.S. at 650–52, 94 S.Ct. 2431; H.R. Report No. 1040, 90th Cong., 1st Sess. (1967) in 1968 U.S.Code Cong. & Admin.News at 1962 *et seq.*) Instead, the Court found that the Act was intended to protect honest wage earners from excessive garnishments of their salaries, which were believed to play a role in driving individuals into bankruptcy. (417 U.S. at 650–51, 94 S.Ct. 2431; 15 U.S.C. § 1671; H.R. Report, *supra,* 1968 U.S.Code Cong. & Admin.News at 1963, 1977–79.) As the Court observed, "In short, the Consumer Credit Protection Act sought to prevent

consumers from entering bankruptcy in the first place. However, if, despite its protection, bankruptcy did occur, the debtor's protection and remedy remained under the Bankruptcy Act." (417 U.S. at 651, 94 S.Ct. at 2436.) The draftsmen of the CCPA were concerned only with the problem of imposing uniform limitations on wage garnishment and did not intend to create a federal bankruptcy exemption.

California has a comprehensive statutory scheme for protecting debtors by limiting assets to which creditors can resort. (Cal. Code Civ.Proc. §§ 688(a), 690.1–.29 (West Supp.1977).) Among the California exemption provisions is Section 690.6(a) protecting "earnings of the debtor received for his or her personal services." It provides that of those earnings "[o]ne-half or such greater portion as is allowed by statute of the United States . . . shall be exempt . . . ."[10] The debtor is afforded that exemption without the necessity of filing an exemption claim. (*Id.*) The debtor can also obtain a further exemption of as much as all of his or her earnings if the debtor can show that it is necessary for his or her use. (*Id.* § 690.6(b).)

649, 94 S.Ct. 2431.) Appellants here make a similar argument, which reflects a fundamental misunderstanding of the relationship, if any, between the CCPA and the Bankruptcy Act. The question is not whether a bankruptcy proceeding is a "garnishment" within the intent of the CCPA—which is clearly a contention without merit—but whether the CCPA is an exemption statute within the meaning of Section 6.

**9.** Conversely, those federal statutes which are said to be exemption statutes of the United States do not refer explicitly to bankruptcy. (*See generally* 1A Collier, *supra,* ꝏ 6.17, at 900–01, citing as federal exemption statute 38 U.S.C. § 3101(a) (1971) (veteran's pension benefits not "assignable . . . and . exempt from taxation, . . . the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever . . . .."). *See also* 5 U.S.C. § 8346(c) (1971) (federal employees' pension benefits "not assignable, either in law or equity, or subject to execution, levy, attachment, garnishment, or other legal process.") (predecessor statute held bankruptcy exemption in *In re Barry* (E.D.N.Y.1943) 52 F.Supp. 492, 493, aff'd (2d Cir. 1944) 141 F.2d 1021); *In re Houchins* (S.D.W.Va.1937) 17 F.Supp. 556, 556–58 (proceeds of bonds exempt in bankrupt-

cy where bonds are not "transferable, assignable, subject to attachment, levy or seizure under any legal or equitable process" by federal law).) These federal statutes differ, however, from the CCPA in rendering the property both non-assignable and non-leviable, taking it out of the § 70(a)(5) definition of property. (*See* note 5, *supra.*)

**10.** The statute provides in pertinent part:

"(a) One-half or such greater portion as is allowed by statute of the United States, of the earnings of the debtor received for his or her personal services rendered at any time within 30 days next preceding the date of a withholding by the employer under Section 682.3 [earnings execution provision], shall be exempt from execution without filing a claim for exemption . . . . .

"(b) All earnings of the debtor received for his or her personal services rendered at any time within 30 days next preceding the date of a withholding . . . if necessary for the use of the debtor or the debtor's family . . . unless the debts are: (1) Incurred . . . for the common necessaries of life. (2) Incurred for personal services rendered by any employee or former employee of the debtor."

We must first consider whether Section 690.6 operates as a state exemption statute within the meaning of Section 6, a point upon which we have been unable to discover any prior authority. (*But see In re Willet* (S.D.Cal.1967) 265 F.Supp. 999, 1003–04 (predecessor statute to § 690.6 "would be" § 6 exemption; *dicta* ).) The general rule is that property exempt from execution by state creditors is exempt under Section 6. (*See generally* 1A Collier, *supra,* ¶ 6.13, at 867–69.) Section 6 thus looks to the treatment of the property by the state law; that law controls both whether an exemption exists and its extent. The California statute clearly states that wages are "exempt" from creditors' demands to the extent provided therein. (*See* Cal.Code Civ. Proc. §§ 688, 690(b), 690.6.)[11] The statute has been routinely treated as an exemption statute (*see Lines v. Fredrick* (1970) 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (at minimum, vacation pay exempt as to 50% under § 690.6's predecessor)), and appellees do not contest this characterization of the statute. We hold that Section 690.6 is an exemption statute for purposes of Section 6 of the Bankruptcy Act.

We next turn to the interaction of the California statute and the Consumer Credit Protection Act. California has interpreted its statute protecting its debtors' wages to the extent of either half "or such greater portion as is allowed by statute of the United States" to incorporate the 75 percent protection accorded by the CCPA. Thus, in *Raigoza v. Sperl* (1973) 34 Cal.App.3d 560, 563 & n. 4, 110 Cal.Rptr. 296, 298 & n. 4, the court states, "section 690.6 provides, in substance, that at least 75 percent of a debtor's earnings are not subject to levy . . . . . With respect to wages, the writ of execution affects a maximum of 25 percent of the debtor's net earnings."[12]

■ We defer to California's construction of its own statute as incorporating the CCPA. Of course, California's interpretation of its statute is only relevant because the Bankruptcy Act adopts California's exemption statute. (*See Holden v. Stratton, supra.*)

Superficially, it may seem to be anomalous that the CCPA is not an exemption statute to which the Bankruptcy Act refers, at the same time it becomes an exemption statute for all practical purposes via California law. The process of double adoption, however, is entirely consistent with Bankruptcy Act policy. The CCPA purports to do only what California permits it to do— namely, to set the levels of maximum garnishment. The California statute continues to function as an exemption statute, both for the purposes of state law and for the purposes of Section 6. Section 6 adopts, as an exemption, any state law which would shield the property in question from execution by a creditor in a non-bankruptcy proceeding and thus adopts California's adoption of the CCPA. If we were to assume, on the contrary, that the CCPA preempted Section 690.6, the result would be the totally unacceptable result that a California bankrupt would be entirely stripped of his state wage earner's exemption in bankruptcy proceedings. That conclusion would, of course, be inconsistent both with the purposes of Congress in creating the

---

11. Were the law to go further and state that it spoke to the bankruptcy situation, it would risk being deemed an unconstitutional interference with congressional prerogatives in the bankruptcy sphere. (*See, e. g., In re Kanter* (9th Cir. 1974) 505 F.2d 228, 230–31 (California statute exempting ' property only in bankruptcy context void under Supremacy Clause; exemptions under Section 6 are those generally available as against state judgment creditors).)

12. The provision for "receipt" of federal law was added in 1970 soon after the 1968 enactment of the CCPA. Although there is no legislative history on point, it seems clearly intend-

ed to avoid any constitutional problems with respect to California garnishment proceedings. (*See* B. Witkin, 5 California Procedure § 60, at 3436–37 (2d ed. 1971) (statute amended to reflect change in federal law).) It is also of some significance that in an unrelated amendment of § 690.6 in 1974, the California Law Revision Commission noted, "These changes do not, of course, affect the federal exemptions from garnishment. See Consumer Credit Protection Act, §§ 301–307, 15 U.S.C. §§ 1671–77." (Cal. Code Civ.Proc. § 690.6 (*Comment*; West Supp. 1977).)

CCPA, as well as Congress' intention to provide debtors protection from their creditors in bankruptcy pursuant to provisions of state law. (*See Perfection Paint Products v. Johnson* (1958) 164 Cal.App.2d 739, 330 P.2d 829 (construing the predecessor statute as intended to allow debtor and family to maintain a basic standard of living).)

The order is vacated and the cause is remanded to the district court for further proceedings consistent with the views herein expressed.