In the Matter of SIERRA TRADING CORPORATION, a Nevada corporation, Debtor-Appellee.

Arthur SHERR and Richard Rubin, Petitioners-Appellants,

v.

L. W. WINKLER, Jr., Trustee, Respondent-Appellee.

No. 72–1537.

United States Court of Appeals, Tenth Circuit.

Aug. 15, 1973.

Rehearing Denied Sept. 17, 1973.

Paul B. Rodden, Rodden, Cooper, Woods & Mitchell, Denver, Colo. (C. James Cooper, Jr., and Richard T. Paynter, Jr., Denver, Colo., with him on the brief), for petitioners-appellants.

James A. Clark, Denver, Colo., for trustee-appellee.

Before PICKETT, HILL and BARRETT, Circuit Judges.

PER CURIAM.

This appeal is from an order of the United States District Court of Colorado determining the rights of a mortgagee and assignee to oil and gas income that was delivered to a trustee in a proceeding under Chapter X of the Bankruptcy Act wherein Sierra Trading Corporation sought reorganization. The dispute arises over the division of the costs of drilling and development of producing property in Campbell County, Wyoming. The trial court held that the trustee was entitled to Sierra's share of the income from these leases without cost "until the wells were in production."

In 1968 Sierra Trading Corporation was the owner of a number of oil and gas leases in Campbell County, Wyoming, including a one-half interest in those known as the Ute leases. The remaining 50% of the Ute leases belonged to American Petrofina Corporation of Texas which had drilled four producing wells thereon under a prior operating agreement with Sierra. It is agreed that Petrofina had the right to retain its development and production costs from the sale of oil and gas.

On December 16, 1968, Sierra entered into a general agreement with Rapp Oil Corporation wherein Rapp represented that it had $3,000,000 available for a program of drilling and completion of oil and gas wells during the year 1969 on leases owned by Sierra. The unrecorded agreement, which described no leases in particular, required Rapp to drill and develop leases to be designated by the parties, with a portion of the cost of development wells to be paid by Sierra[1]. Pursuant to this agreement Sierra assigned 75% of its interests in oil and gas leases, including a 37½% interest in the Ute leases.

In the course of complying with the contract, Rapp borrowed $1,000,000 from appellants Sherr and Rubin and executed a 20% interest per annum note for that amount. To secure the payment of this note Rapp gave Sherr and Rubin a mortgage on the leases acquired from Sierra and assigned all of its interests in the production income from the Petrofina lease.

In the Chapter X proceedings the court ordered Petrofina to turn over to

---

1. The contract provided that Rapp should furnish the necessary funds to pay for the initial well drilled by it on each lease acquired to be drilled. On subsequent development wells Sierra was required to pay its proportionate share of the costs. No special reference was made to allocation of costs which had been expended in the development of the Ute leases.

the trustee all monies then held by it over and above the costs of development and expenses of operation of the oil lease. Pursuant to this order Petrofina delivered to the trustee a total of $248,992.40, which represented a 50% working interest on the four Ute wells through February 11, 1972. As a result of three separate orders following an evidentiary hearing, the court directed the trustee to pay to Sherr and Rubin the sum of $91,821.08. The court computed this amount by crediting petitioners with 37½% of the income from the Ute leases, net of royalties, and charging them with 50% of the total development costs and 37½% of production costs. Sherr and Rubin concede that their share of the income received by Petrofina from production income was chargeable with 37½% of the drilling and development costs, but assert that the court's division order requires them to pay, in addition, Sierra's 12½% share of these costs. This 12½% share amounts to $58,788.74 and is the amount appellants seek to recover herein. Although we are unable to independently compute or reconcile exactly the cost figures, the parties are apparently in agreement as to such amounts and the only question presented is the allocation of those undisputed costs.

■ We think a fair analysis of the various court orders affecting the distribution of the fund is that Sierra or the trustee should receive a 12½% share of the income from the Ute leases without any deduction for costs incurred until the wells were in production and that Rapp, and therefore appellants, should have to bear 50% of the total development costs on all the Ute wells. This conclusion apparently was based on a finding that from all the circumstances Sherr and Rubin "knew or should have known that Rapp was obligated to bear some portion of development costs." Accepting the court's conclusion that the mortgage lien and assignment of proceeds do not include development and operational costs, we find

no basis for fixing the liability at more than Rapp's 37½% proportional share of the total expenditure. The owner of a working interest in an oil and gas lease is entitled to its pro rata share of the net proceeds from the production from the lease, which is to be determined by deducting royalties and the necessary expense of development, production and marketing. Shinn v. Buxton, 154 F.2d 629 (10th Cir. 1946); Torgeson v. Connelly, 348 P.2d 63 (Wyo.1959); 3A Summers on Oil & Gas § 599 (2nd ed. 1958). When Sherr and Rubin accepted the mortgage and assignment as security for the loan, an examination of the abstract of title showed that Rapp owned 37½% of the Ute leases and Sierra 12½%, and as held by the trial court the security was accepted without knowledge of any unrecorded agreement between Sierra and Rapp. It follows that in computing the distribution of the net proceeds from the Ute leases, Sherr and Rubin should be charged with 37½% of the costs of development and production, and Sierra with 12½% thereof.

■ It is urged that the trustee purchased interest bearing certificates of deposit with the funds acquired from Petrofina and should be required to account for the amount earned through investment of the money belonging to appellants. These funds were never the property of Sierra or the trustee. Petrofina held them for the benefit of the owners of a 50% working interest and the intervention of bankruptcy on the part of Sierra did not affect the rights of others to possession of their share of the funds. Except for the turnover order they would have been paid directly to the assignees. We see no reason why the trustee should receive a windfall by way of interest earned from the investment of money belonging to others and he will be required to account therefor. Sherr and Rubin are not creditors of the bankrupt and cases like City of New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949), and Vanston

Bondholders Protective Committee v. Green, 329 U.S. 156, 67 S.Ct. 237, 91 L. Ed. 162 (1946), have no application.

A question is raised concerning the validity of the 20% interest provision of the notes in question. This is not an issue properly before this court for determination.

Reversed and remanded with instructions to enter judgment in accordance with the views herein expressed.