Arthur SHERR and Richard Rubin,
Petitioners-Appellants,

v.

SIERRA TRADING CORPORATION, a
Nevada corporation, Debtor-
Appellee,

L. W. Winkler, Jr., Trustee-Appellee.

Peter GRAF and Harry Rubin,
Petitioners-Appellants,

v.

SIERRA TRADING CORPORATION, a
Nevada corporation, Debtor-
Appellee,

L. W. Winkler, Jr., Trustee-
Appellee.

Nos. 73–1251, 73–1252.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Sept. 14, 1973.

Decided Jan. 16, 1974.

Paul B. Rodden and Richard T. Paynter, Jr., Denver, Colo., for appellants.

James A. Clark, Denver, Colo., for trustee-appellee.

Before SETH, McWILLIAMS and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

I.

No. 73–1251

The issues presented for our review arose following the filing of a Chapter X petition for reorganization under the Bankruptcy Act by Sierra. After this appeal was taken and briefs filed, our per curiam opinion was filed in case No. 72–1537, entitled In Re Sierra Trading Corporation, 486 F.2d 191 (10th Cir. 1973). We there reversed the trial court and remanded with instructions to enter judgment directing the trustee to tender unto the appellants here the additional sum of $58,788.74, the exact amount sought here, which represents development and production costs chargeable to Debtor Sierra's 12½% working interest share in the subject leases situate in Campbell County, Wyoming, and production realized therefrom. Rehearing has been denied.

We are urged to reverse the trial court in its failure to accede to these demands of appellants: (1) requiring the trustee in bankruptcy to segregate funds awarded by the reorganization court to third parties from other funds held by the trustee which are subject to the Plan of Reorganization pending appeal of the Order awarding said funds to a third party; (2) requiring the trustee to segregate funds which are claimed by a third party and are in issue on appeal, from other funds held by the trustee which are subject to the Plan of Reorganization pending appeal of the Order; (3) if the trustee is not required to segregate the funds, requiring him to post a bond equal to or greater than the amounts in issue to protect appellants' rights; and (4) requiring that the trustee's bond should be increased to protect appellants' claims in that the trustee took appellants' funds without first examining title to the producing oil properties and without prior notice to appellants in apparent breach of duty.

We need not reach these issues. Our per curiam opinion in In Re Sierra

Trading Corporation, *supra,* awarded appellants, Sherr and Rubin, the additional sum of $58,788.74 claimed, together with all interest earned from the investment of the moneys turned over to the trustee from operator Petrofina (representing proceeds from production) from certificates of deposit. We there specifically noted that "These funds were never the property of Sierra or the trustee. Petrofina held them for the benefit of the owners of a 50% working interest, and the intervention of bankruptcy on the part of Sierra did not affect the rights of others to possession of their share of the funds." Because the funds were never properly subject to the summary Turnover Order of September 4, 1970, we decline to opine relative to the above relief denied appellants by the District Court following hearing held on January 3, 1973 on Appellants' Petition to Increase Trustee's Bond or to Segregate Funds.

## II.

### No. 73–1252

This action was initiated by the Trustee, Winkler, in proceedings for reorganization of Sierra under Chapter X against all parties who claim, or may claim, any interest in four Wyoming oil leaseholds. The trustee sought a declaration of Sierra's (Debtor's) rights in one of the leaseholds, together with a declaration concerning the existence, nature of, and the priority of its lien rights in all of the leaseholds, and those of other claimants, and a foreclosure thereof. In addition, the trustee prayed for money judgments against some of the respondents-defendants, including appellants Peter Graf and Harry Rubin, representing a percentage reimbursement for development and production costs incurred relating to three Wyoming oil and gas leaseholds.

Graf and Rubin specially appeared. They filed two motions, a Motion to Dismiss the Action and/or a Motion to Quash Service of Process. The parties agree that Debtor, Sierra Trading Cor-

poration, owns a 25% interest and that appellants Graf and Rubin own the remaining 75% interest, all subject to various landowner and overriding royalty interests, in three of the leaseholds situate in Wyoming. Their interests are in cotenancy. Graf and Rubin are residents of New York. Debtor is a Colorado corporation. The Chapter X proceeding is, of course, before the District Court in Colorado. Graf and Rubin allege that no transactions relating to their 75% working interest in the Wyoming leases took place in Colorado. Debtor or trustee have at all times been in possession, as operator, of the Wyoming leaseholds.

Following the filing of the petition in reorganization the trustee entered into the leaseholds "to complete drilling and place the oil wells in production," seeking to carry on Debtor's business. Graf and Rubin assert that they, as cotenants, did not receive notice that the wells were going to be drilled or that they had been drilled. The record does not indicate that appellants had notice. However, we deem it doubtful, under Wyoming law, that such notice was required. Torgeson v. Connelly, 348 P.2d 63 (Wyo.1959).

Appellants also assert that there was no operating agreement between them and Debtor, or the trustee. Although no such agreement appears in the record and no contention to the contrary is made by the trustee, it is most difficult to perceive how the development could have proceeded and the oil marketed without an operating agreement existing between the parties or their predecessors in interest.

The presence of such an operating agreement does not, however, present a problem in relation to the issues raised by Graf and Rubin on appeal. They contend: (1) that the court did not have jurisdiction over the funds representing the production attributable to the 75% interest of Graf and Rubin, as cotenants of Debtor, in the Colorado Chapter X bankruptcy proceedings in light of the

fact that neither Debtor nor trustee were in possession of the funds when the Chapter X proceeding was filed; (2) that the court, in the Colorado bankruptcy proceeding, does not have jurisdiction over Graf and Rubin, residents of New York, or over the subject matter of the wells situate in the State of Wyoming; (3) that the court has no authority, ex-parte, to enjoin an action filed in the State of Wyoming concerning funds held by the crude oil purchaser, Marathon Oil Company, in Wyoming, and which does not involve property of the Debtor; and (4) that the Colorado bankruptcy re-organization court is not the proper forum for taking evidence and applying the law relative to the proper accounting between cotenants in an oil and gas lease situate in the State of Wyoming when one claimed cotenant is the Debtor in a bankruptcy proceeding in Colorado, and the other cotenants are residents of New York.

These various contentions are intertwined in the Court's Order of January 17, 1973, in the action brought by the trustee leading to this appeal from the Court's denial of Graf's and Rubin's Motion to Dismiss the Action and Graf's Motion to Quash Service. The Court did grant Rubin's Motion to Quash Service, finding that it was defective under Rule 4(d)(1) of the Fed.R.Civ.P. and Rule 4(e)(1) of the Colorado rules.

Graf and Rubin entered into a stipulation with Marathon Oil Company relating to the Snell 5-26 lease in Campbell County, Wyoming, in a civil action filed in the District Court of Natrona County, Wyoming, by Rubin and Graf against Marathon, praying for an order requiring Marathon to pay over the proceeds from production represented by the 75% working interest owned by Rubin and Graf in that lease. This stipulation referred to Judge Arraj's Order in the Chapter X proceeding staying the Wyoming action relating to the 75% working interest. The crux of the stipulation is to insure that Marathon is not in default for failure to answer or otherwise plead in the Wyoming pro-

ceeding in view of the Stay Order and that the abatement of the Wyoming action is without prejudice to the parties.

The trustee contends that: (1) the Order denying the Motion to Dismiss or to Quash Service of Process is "clearly interlocutory and not a final order" thus failing to fall within the categories of orders made appealable by 28 U.S.C.A. § 1292(a); (2) that there was no effort to comply with 28 U.S.C.A. § 1292(b); and (3) that the Court did not direct entry of a final judgment under Rule 54(b) of the Federal Rules of Civil Procedure.

■ We do not interpret the Court's Order of January 17, 1973, denying the motions as resting or relying upon these grounds. The Court ruled on the motions following a hearing, clearly treating them as asserting substantial rights. An interlocutory order to be appealable must have been a determination of some right or duty following hearing. Dubnoff v. Goldstein, 385 F.2d 717 (2nd Cir. 1967); Cowans Bankruptcy Law & Practice § 1149 (pp. 1973). We, too, have held that interlocutory orders in bankruptcy proceedings are appealable as a matter of right under the Bankruptcy Act relating to jurisdiction of appellate courts if the order determines a matter adverse to the asserted rights of a party. General Electric Company v. Beehive Telecasting Corporation, 284 F.2d 507 (10th Cir. 1960); Harris v. Mills Novelty Co., 106 F.2d 976 (10th Cir. 1939); 11 U.S.C.A. § 47(a).

■ The motions here considered involved exercise of the bankruptcy court's discretion. The appellate court will not interfere except upon a showing of a clear abuse of discretion. Consumers Aluminum Co. v. Dresser, 157 F.2d 416 (10th Cir. 1946). The Court found that although Debtor Sierra did not physically occupy the subject leasehold properties situate in the State of Wyoming on the date the reorganization petition was filed, the trustee entered the leaseholds soon afterwards "to complete drilling and place the oil wells into production."

The Court further found that the trustee's entry was uncontested and that it constituted such possession of the leaseholds as would "give us jurisdiction to determine the rights of the owners and lien claimants."

We must set aside the Court's ex-parte Order, following the trustee's petition, requiring Marathon Oil Company, an Ohio corporation, to turn over to the trustee all proceeds in its possession, as purchaser, from the sale of oil produced, in part, from the Snell lease and directing Marathon to pay over future proceeds from the sale of such oil to the trustee. The petition was granted by the Special Master on November 4, 1971. On February 8, 1973, Marathon moved the Court to vacate the Turnover Order asserting, in part, that the Court had neither the power to summarily adjudicate, nor the requisite jurisdiction over the proceeds or the question of to which parties the proceeds lawfully belonged. Marathon asserted that it would be willing to turn over funds within the constructive possession of Debtor Sierra and therefore within the Court's summary jurisdiction (presumably those funds representing Debtor's 25% interest), but that the Turnover Order of November 4, 1971, went beyond this jurisdiction to encompass funds not validly adjudicated to be in Debtor's constructive possession or that of the trustee.

On August 16, 1972, the bankruptcy court ordered the proceedings brought by Graf and Rubin against Marathon Oil Company in the Wyoming state District Court, to recover the proceeds from the sale of oil from the Snell lease attributable to their 75% interest, to be enjoined and stayed pending further order.

The reorganization court rejected Graf and Rubin's challenges to its jurisdiction either over the *res,* including the leaseholds and the proceeds or over them *in personam.* The Court, in rejecting their contentions put its emphasis upon the fact that the Debtor and/or trustee were in possession of the leaseholds, had completed the wells and put them into production, and had incurred expenses as "operator" in possession of the leaseholds. Under these circumstances, the Court held that the language of Section 111 of the Bankruptcy Act, 11 U.S.C.A. § 511 (1970) controls. It provides that the reorganization court has "exclusive jurisdiction of the debtor and its property, wherever located." From this, the Court reasoned that it had jurisdiction based upon the possession of the leaseholds by Debtor and the subsequent and present possession of the trustee.

Specifically, the Court found—and the finding is uncontested—that the trustee entered the leaseholds soon after the reorganization petition was filed to "complete drilling and place the oil wells into production." The Court obviously equated "possession" of the leaseholds with "possession" of the proceeds realized from production held by Marathon.

In order for the reorganization court to have summary jurisdiction to order a turnover of property or funds, two requisites must be present: (1) the money or property directed to be delivered to the trustee or other officer of the court must be a part of the Debtor's estate; and (2) the person ordered to turn it over must have had it in his possession or under his control at the time of the Turnover Order. In re Rosser, 101 F. 562 (8th Cir. 1900); 2 Collier, Bankruptcy, ¶ 23.10 [2] (1971). As to property within the actual or constructive possession of the bankrupt, a court of bankruptcy can determine in a summary proceeding controversies involving adverse claims of title, but when possession is held by a third person, adverse claims may not be summarily adjudicated unless by consent, or unless the claim is merely colorable. Thompson, Trustee v. Magnolia Petroleum Co., 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940); MacDonald v. Plymouth County Trust Co., 286 U.S. 263, 52 S.Ct. 505, 76 L.Ed. 1093 (1932); Harrison, Trustee v. Chamberlin, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897 (1926); Taubel-Scott-Kitzmiller Company, Inc. v. Fox, 264 U.S.

426, 44 S.Ct. 396, 68 L.Ed. 770 (1924); In re Fox Metals Industries, Inc., 453 F.2d 1128 (10th Cir. 1972); City and County of Denver v. Warner, 169 F.2d 508 (10th Cir. 1948). The bankruptcy court did not have summary jurisdiction over the proceeds of production held by Marathon, a third person, to determine claims thereto. Accordingly, the Colorado reorganization court's Turnover Order and Stay Order must be set aside. The Turnover Order could not reach the proceeds of production held by Marathon, the crude purchaser. At all material times possession of the proceeds was in Marathon, actual or constructive. Furthermore, the proceeds were not—in their entirety—the "property" of the debtor. 11 U.S.C. § 511.

At the date of the Court's Turnover Order, Graf and Rubin had initiated a suit against Marathon, as claimants of a 75% working interest, in the District Court of Natrona County, Wyoming, praying for an accounting of proceeds due them from production of crude oil purchased by Marathon from certain leases situate in Big Horn County, Wyoming. That proceeding was stayed by the Order of the reorganization court.

■ We hold that the reorganization court erred in assuming plenary jurisdiction over the parties in support of its Turnover Order or Stay Order. See 6 Collier, Bankruptcy, ¶ 3.19 [1] (1972), and cases cited therein. Marathon held the proceeds of production, as to the 75% interest, adverse to the trustee when the reorganization court improperly took "possession" thereof. There is no showing that the Wyoming suit "would embarass the administration of the debtor's estate." Diners Club, Inc. v. Bumb, 421 F.2d 396 (9th Cir. 1970). 28 U.S.C.A. § 959 evidences the congressional intent that there are certain cases where the trustee may have to resort to other forums than the reorganization court in plenary rather than summary proceedings.

■ We have recognized that the bankruptcy court, pursuant to authority to collect property of the bankrupt and determine controversies in relation thereto, may make such orders, issue such process and enter such judgments in addition to those specially provided for as may be necessary to enforce provisions of the Bankruptcy Act. City and County of Denver v. Warner, supra. The reorganization court may direct and authorize the trustee to make appearance in the reinstated Wyoming state court proceeding necessary to fully protect all claims of Debtor to the proceeds in the possession of Marathon.

■ The trustee's uncontested "possession" of the Wyoming leaseholds vests legal custody of these specific real properties in the Colorado reorganization court, authorizing that court to entertain a plenary proceeding to adjudicate that portion of the trustee's petition praying for a declaration of ownership and the existence, nature and priority of its lien rights and those of others in all of the Wyoming leaseholds and a foreclosure thereof.

We are not unmindful of the interrelation between the two proceedings, i. e., one as the proceeds held by Marathon applicable to certain producing wells in the state court of Wyoming and a determination of ownership in the leaseholds and lien rights therein. We are aware that like interrelationship may arise relating to other leaseholds in the possession of the trustee. It may very well be that the reorganization court may determine to direct the trustee to initiate suits in Wyoming or elsewhere to make claim upon the proceeds representing debtor's 25% interest realized from production, together with any claim the trustee may have against the interest of other owners out of such proceeds as reimbursement for costs expended in development, completion and production from the leaseholds.

■ Legal custody of specific property by one court of competent jurisdiction withdraws it, so far as is necessary to accomplish the purpose of that custody, until the purpose is completely accomplished, from the jurisdiction of

every other court, as between the jurisdiction of a state or other court and a court of bankruptcy. Metcalf v. Barker, 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122 (1902). While it is true that to administer property situate in a territorial district other than that of the bankruptcy court, it is often necessary for the bankruptcy court to authorize the trustee to invoke the aid of the United States District Court in the district where the property is located and to undertake so-called ancillary proceedings; this is done only in order that the trustee take possession of the property and proceed to reduce it to cash so that it may be forwarded to the bankruptcy (local) court for its administration. Cowans Bankruptcy Law & Practice § 835 (1963). Bankruptcy courts "have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession." Cline v. Kaplan, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97 (1944). To the same effect it has been held that while recognizing that a trustee has only the right to pursue claims belonging to the debtor estate, the Court must determine title to the property and adjudicate lien rights therein in order to finally determine the nature and extent of the claim belonging to the estate. Ex Parte Baldwin, 291 U.S. 610, 54 S.Ct. 551, 78 L.Ed. 1020 (1934); In Re American National Trust, 426 F.2d 1059 (7th Cir. 1970); Duda v. Sterling Mfg. Co., 178 F.2d 428 (8th Cir. 1949); In Re Cosmopolitan Bond & Mortgage Co., 79 F.2d 457 (7th Cir. 1935), cert. denied 296 U.S. 657, 56 S.Ct. 382, 80 L. Ed. 468 (1935).

It is true that a determination of what matters are appealable can be an elusive question. In general it is possible to appeal both interlocutory and final "proceedings in bankruptcy" but no interlocutory matters in "controversies arising in proceedings in bankruptcy." In Re Brendan Reilly Associates, Inc., 378 F.2d 30 (2nd Cir. 1967). Definitions of these terms have been made, but are difficult to apply. Standard Electronics Corporation v. Kenneally,

336 F.2d 394 (8th Cir. 1964), Annot., 5 A.L.R.2d 1124 (1966). The rights and/or duties asserted within the ambits of the motions filed and the Court's rulings thereon are substantial proceedings in bankruptcy. The trustee's reliance on 28 U.S.C.A. § 1292(a) and (b) and Rule 54(b) of the Federal Rules of Civil Procedure are misplaced. It is well settled that an order dismissing the action, as distinguished from dismissal of the complaint, is a final judgment. But beyond this, jurisdiction vests in the appellate courts to review any judgment, order or decree upon a complaint of an aggrieved party from the bankruptcy court, both as to matters of law and of fact where the matter in controversy was determined by the bankruptcy court, without a jury. Further, such appeals may be taken without prior allowance of the appellate court in cases where the order, decree, or judgment complained of involves less than $500. 11 U.S.C.A. §§ 47 and 48; General Electric Company v. Beehive Telecasting Corporation, *supra*; Scott v. Jones, 115 F.2d 133 (10th Cir. 1940). The language employed in DeLaney v. City Investment Company, 224 F.2d 808 (10th Cir. 1955), is best explanatory of our holding that the instant appeal is well taken:

The record poses at the threshold a question concerning the jurisdiction of this court to entertain the appeal. Section 24, sub. a of the Bankruptcy Act, as amended, 11 U.S.C.A. § 47, sub. a, makes appealable as a matter of right virtually all interlocutory orders in proceedings in bankruptcy involving $500 or more. (Citations omitted). But in order to be appealable under the statute, an interlocutory order must determine something. It must substantially determine some issue or decide some step in the course of the proceeding. It must have the character of a formal exercise of judicial power affecting the asserted rights of a party. An interlocutory order which determines nothing adversely to the asserted rights of a par-

ty is not reviewable on direct appeal therefrom. (Citations omitted).

224 F.2d at 809, 810.

We affirm the reorganization court's Order declaring plenary jurisdiction to hear and adjudicate title and lien claims, together with foreclosure rights, applicable to the Wyoming leaseholds in the possession of the trustee. We reverse the reorganization court's Order declaring its jurisdiction over the proceeds of production held by Marathon Oil Company, the crude oil purchaser, from producing wells in Wyoming. We remand to the reorganization court with instructions to quash the Turnover Order and the Stay Order. The Court is further directed to instruct the Clerk to remit the proceeds turned over, together with all accrued interest, to Marathon Oil Company when, in the Court's discretion, the interests of all of the parties making, or who may make claims thereto, including the trustee, may be adequately protected.

Affirmed in part, reversed in part and remanded.