In the Matter of GULFCO INVESTMENT CORPORATION, and its wholly-owned subsidiary, Family Loan, Inc. of Springfield, Missouri, Gulf South Corporation, Intertek Financial Corporation and Aristocrat Motor Hotel of Hot Springs, Inc., Horseshoe Development Corporation, et al., and Delta Mortgage Corporation, et al., Debtors.

FEDERAL DEPOSIT INSURANCE CORPORATION, Richard L. Pratt, William R. Pratt, and First National Citibank, Appellants,

v.

Dan HOGAN, Trustee, Appellee.

Nos. 77–2065 to 77–2067.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 15, 1978.

Decided Feb. 7, 1979.

Rehearing Denied April 10, 1979.

Norman E. Reynolds, Oklahoma City, Okl. (Jarrel D. McDaniel, Houston, Tex., on the brief), for appellant Federal Deposit Ins. Corp.

H. David Blair of Murphy, Blair, Post & Stroud, Batesville, Ark. (Phillip L. Savage of McKenney, Stringer & Webster, Oklahoma City, Okl., and Marvin D. Thaxton of Thaxton & Hout, Newport, Ark., on the brief), for appellants Richard L. Pratt and William R. Pratt.

Sam G. Bratton II of Doerner, Stuart, Saunders, Daniel & Langenkamp, Tulsa, Okl. (Sam P. Daniel, Jr. of Doerner, Stuart, Saunders, Daniel & Langenkamp, Tulsa, Okl., on the brief), for appellant First National Citibank.

James P. Linn of Linn, Helms, Kirk & Burkett, Oklahoma City, Okl. (Herbert Kenney of Linn, Helms, Kirk & Burkett, Oklahoma City, Okl., on the brief), for appellee Dan Hogan.

Grant G. Guthrie, Sp. Counsel, Securities and Exchange Commission, Washington, D. C. (David Ferber, Sol. to the Commission, Washington, D. C., and Sheldon B. Mazor, Sp. Counsel, Securities and Exchange Commission, Chicago, Ill., on the brief), for appellee Securities and Exchange Commission.

Before HOLLOWAY and DOYLE, Circuit Judges, and STANLEY,* Senior District Judge.

WILLIAM E. DOYLE, Circuit Judge.

The matter before us is concerned with extensive proceedings pursuant to Chapter X of the Bankruptcy Act, which proceedings have been going on in court for a lengthy period of time without substantial progress. These proceedings were instituted in March 1974, on behalf of Gulf South Corporation and its subsidiaries. The extent of this corporate conglomerate is shown in outline form in the chart which is appended to this opinion. One is immediately struck with the number of the subsidiaries, although at this juncture our main concern for the purposes of this appeal is limited to two of the subsidiaries.

The order which is the subject of this appeal was entered on September 28, 1977, by the United States District Court for the Western District of Oklahoma. This order undertook to consolidate, for purposes of the Chapter X reorganization proceedings, the assets and liabilities of the debtor corporations (all of them).

The main problem which is advanced on this appeal grows out of the court's order which would have the effect of eliminating security of some creditors, would combine the assets and liabilities of the debtor corporations for reorganization purposes, and would eliminate certain guarantees made by one of the debtor corporations to secure the debt of another of the debtor corporations. One aspect of the trial court's decision herein is to nullify the security that was created in favor of one group of creditors in the form of corporate stock of one of the debtor corporations. These creditors would also become general or unsecured creditors in the reorganization plan. The reason that the district court decided to take the action which it took was the presence of what it terms as overwhelming accounting difficulties. In essence the court held that the presence of common control together with the standards that were contained in an early decision of this court in *Fish v. East,* 114 F.2d 177 (10th Cir. 1940), supported, if it did not mandate, consolidation.

The trial court reasoned that the accounting difficulties in evaluating the intercompany accounts and determining the assets and liabilities of each of the corporations were of such magnitude that they outweighed any individual equitable problems that might be present. Intercompany transactions, the court reasoned, had not been conducted on an arm's length basis and were not documented in order to allow evaluation of the financial condition of each

* Of the District of Kansas, sitting by designation.

corporation individually such as would have been possible had each corporation been independently managed. For example, the district court found that in the case of two of the important subsidiary corporations that are before us, namely, Delta Mortgage Corporation (Delta) and Horseshoe Development Corporation (Horseshoe), a belief existed in the minds of the creditors that these corporations were solvent. The district court said that the accounting problems were so difficult that determination of solvency was prevented. The court held out the likelihood that some of the creditors of Delta and Horseshoe, who had relied on the separate credit of these entities, would receive some kind of priority as part of the reorganization plan. The creditors who are here objecting were not given such a commitment.

There are three appeals which have been filed by creditors who object to the consolidation order. They object to consolidating Horseshoe and Delta with the corporations above these two corporations. They would not object if it amounted to a consolidation of Horseshoe and Delta with the subsidiaries of these two corporations.

## I.

## THE OBJECTIONS TO THE CONSOLIDATION ORDER BY THE FEDERAL DEPOSIT INSURANCE CORPORATION (FDIC)

The International City Bank and Trust Company (ICB) went into receivership in 1976 after it had made two loans to Family Loan, Inc., in the amount of $1,250,000 and $1,800,000. FDIC became the receiver. The loan proceeds were used for real estate development activities by Family Loan, Inc.'s wholly-owned subsidiary, Horseshoe. The $1,250,000 was secured by land sale contracts of Horseshoe. The $1,800,000 loan was secured by 51% of the stock of Horseshoe and was guaranteed by Gulf South Corporation, Gulfco Investment Corporation and Horseshoe.

The district court has already taken a step to authorize the use of the proceeds of the pledged Horseshoe land sale contracts for general expenses. Such an order authorized the trustee to use these payments for general expenses in managing all of the corporations and for promotion expenses in selling more Horseshoe lots. That order was set aside by this court in 1974. In that opinion we said:

> The appellants assert that this application of the lot sale proceeds permitted by the order appealed from is a taking of their security contrary to the Fifth Amendment and is otherwise an improper and unfair device to finance the reorganization proceedings. We must agree. The payments are the security of appellants, and cannot be utilized in the way the trustee is now doing. The order of the trial court permitting the use of these funds results in a depletion of the security of certain creditors to their injury, and for the benefit of others.

*In re Gulfco Investment Corp.*, Nos. 74-1393, 74-1417, 74-1423, and 74-1424 (10th Cir. Dec. 9, 1974).

Since the decision of this court rendered in December 1974, the district court has been applying these proceeds to the satisfaction of the loan from ICB, and the trial court believes that the $1,250,000 loan will be paid out by these loan proceeds. This does not, however, make provision for the payment of the $1,800,000 loan referred to above which was not secured by the land sale contracts. There are certain guarantees applicable to this $1,800,000 loan, and also, some stock of Horseshoe is pledged for the payment of this loan. The effect of the district court's order would then eliminate the security interest provided by the Horseshoe stock and the guarantees given by the three debtor corporations in connection with the $1,800,000 loan would be eliminated, and ICB would take its chances with the other unsecured creditors with respect to this loan.

If the guarantees mentioned above were to be upheld, ICB would become a general creditor of each of the guaranteeing corporations as to the $1,800,000 loan. FDIC's position is, however, that its best chance to

recover the $1,800,000 would be on the basis that Horseshoe would be in a position to pay off its guarantee if it were not consolidated and forced to pool all of its assets with the many other corporations in this gigantic empire.[1] No one knows for sure whether the Horseshoe stock pledged to ICB would pay off. It would not be valued until after payment of all other Horseshoe creditors. So it would be effective security only if there remained some residual value in the corporation after the payment of the other debts.

It is the position of FDIC that there will be a recovery of 100% if it is allowed to pursue the Horseshoe guarantee. FDIC is apprehensive, however, that if the recovery is limited to that of an unsecured creditor (in a consolidation), recovery would not exceed 20 cents on the dollar.[2]

## II.

### THE PRATT OBJECTIONS TO THE CONSOLIDATION ORDER

Richard L. and William R. Pratt were the organizers of Horseshoe in 1962. They operated it as a family-owned corporation, unassociated with the Gulf South group, until the early 1970's. At that time Horseshoe needed financing for development activities, so the Pratts negotiated the sale of Horseshoe to the Gulf South group, hoping that that company could provide the needed financing. As a result of this sale, Horseshoe became a wholly-owned subsidiary of Family Loan, Inc. The Pratts remained as officers and directors of Horseshoe until they resigned in 1973 as officers, and in 1974 as directors.

The Pratts received some cash and the balance in a note secured by the pledge of shares of Horseshoe stock. This note was guaranteed by Gulf South Corporation. The price was based on a fixed amount plus an additional amount determined by future sales and profits. The Pratts filed a claim for $978,819 as a secured creditor of Family Loan, Inc. The amount was based on the pledge of the Horseshoe stock. Arguably, the Pratts are unsecured creditors of Gulf South Corporation as well based on the guarantee. However, they have not pursued this. Undoubtedly this is because they do not assign much value to the guarantee.

Family Loan, Inc., as we have already indicated, promised to pay the Pratts from Horseshoe's assets. The district court considered this agreement similar to the use of a corporation's assets to buy its own stock. The court found that this was an unsavory arrangement. The district court also found that assets were removed from Horseshoe for the purpose of making payments to the Pratts for their stock. The court said that this was a violation of the Pratts' duties to the corporation and to the people paying money out each month for the purchase of their lots. Whether this finding was invalid has not been raised on appeal. The legal effect of the consolidation order would be to place each of the Pratts in the position of an unsecured creditor who would share in the pooled assets which would result from the consolidation.

## III.

### THE CLAIM OF THE FIRST NATIONAL CITY BANK (now Citibank, N.A.)

Citibank is an unsecured, general creditor of Delta for about $140,000. The record does not disclose the exact origins of this debt or much information about it. The district court has not made any factual findings on the character and quality of this liability. In any event, Citibank is of the opinion that Delta and Horseshoe are the only two live concerns among the Gulf South group. As a result, Citibank's preference is to look to the assets of Delta for

---

1. The guarantees, if upheld, would also make ICB an unsecured creditor of Gulf South Corporation and Gulfco Investment Corporation, but the district court does not believe these two guarantees have any value.

2. Necessarily this appraisal is highly speculative based on the fact that there has not been any careful study or analysis of the assets of these corporations.

payment of its claim rather than the pooled resources of all the debtor corporations. Delta was in the business of servicing mortgages.

## IV.

## THE SUPPORTERS OF CONSOLIDATION

Dan Hogan, who is the Chapter X trustee appointed by the court, originally requested consolidation and has continued to support it, believing

> that consolidation is the only course to follow in order to preserve the value of Delta and Horseshoe for the benefit of the creditors. The objecting creditors are demanding what it is impossible to give, treatment as if Delta and Horseshoe were separate and independent entities. The possible injury to the objecting creditors is indefinable and does not outweigh the equity and practical advantages of consolidation.

The Securities and Exchange Commission also has advised the court that it recommended consolidation. It is, of course, concerned with protecting the public investors. It undoubtedly believes that consolidation would improve their condition. The principal public investment was in Family Loan, Inc., consisting of debentures which were sold to the public for about $5,500,000. The district court found that the proceeds from these debentures disappeared into the Gulf South group of companies and cannot be traced.

## V.

## DISCUSSION OF THE ISSUES

The issues are:

*First,* whether this court has jurisdiction to consider this interlocutory appeal from the Chapter X proceeding,

*Second,* whether consolidation can be used to destroy the secured creditor status created by the pledge of the Horseshoe stock,

*Third,* whether consolidation can be used to eliminate guarantees made by one of the debtor corporations to pay for the debt of another, and

*Fourth,* whether consolidation is appropriate.

To solve these problems, we must determine whether the district court abused its discretion in ordering the consolidation, or, stated differently, do the facts justify consolidation under the criteria which are set forth in this court's decision in *Fish v. East, supra.*

### A. *Jurisdiction to Appeal*

■ It is well recognized that interlocutory orders in bankruptcy proceedings are appealable as a matter of right. 11 U.S.C. § 47 (§ 24 of the Bankruptcy Act). To be appealable, an interlocutory order must determine a matter adversely to the asserted rights of a party. *Sherr v. Sierra Trading Corp.,* 492 F.2d 971, 975 (10th Cir. 1974).

■ The order consolidating the various corporations in the Gulf South family is an order adverse to the rights of the appealing parties. *Sherr v. Sierra Trading Corp., supra.* Appeal is accordingly proper, for example, from an order determining priorities, such as secured or unsecured creditors; rejecting or allowing claims like guarantees; and pooling of claims by consolidation.

It needs no argument to demonstrate that the change of status which takes place when consolidation of this sort is ordered, like the stripping of security from some of the creditors, certainly creates jurisdiction to prosecute an appeal. However, all of the parties on both sides are anxious to have a ruling so there is not any objection raised. We note this fact, but we are not finding it as a basis for jurisdiction.

### B. *Whether a substantive consolidation may be used to eliminate the security of a creditor for the purpose of changing his status to an unsecured creditor*

■ The reorganization court has a great deal of power and particularly discretionary

authority.[3] This does not, however, allow the court to ignore the priority rule formulated by the Supreme Court.[4] In a reorganization plan, creditors who have security are to be placed in a different and prior class as distinguished from those whose claims are unsecured.[5] In one case, the Court of Appeals for the Second Circuit held that it was fair and equitable to consolidate the unsecured claims of the parent and its wholly-owned subsidiary. However, the secured claims were not consolidated because of the absolute priority rule.[6]

■ The earlier decision by this court in this identical case ought to have settled the proposition that secured creditors cannot be reduced to the status of unsecured creditors absent some compelling reason, like fraud, for such a drastic change. *In re Continental Vending Machine Corp., supra,* held that security was not to be used by the trustee to benefit other creditors where the secured creditors remained unsatisfied.

■ The district court has said that the security, shares in Horseshoe, will be difficult to appraise and evaluate. This, however, does not furnish a reason to classify the claim as an unsecured one. Criteria such as administrative convenience, expediency and accounting difficulties are not adequate to warrant treatment of a secured creditor as an unsecured creditor. Nor is the awareness by the creditor of the existence of related corporations sufficient to destroy the creditor's security absent circumstances like fraud.

Therefore, ICB through FDIC is entitled to have the security, the shares of Horseshoe, valued. Once the value of this security is established, the district court will be in a better position to assess the type of priority which would be fair and equitable for ICB in a Chapter X reorganization plan.

The Pratts are not entitled to have their security, that is, the shares of Horseshoe, destroyed because such action happens to be convenient or because such action avoids accounting or valuation difficulties. Thus the consolidation order is not to be used in order to destroy otherwise valid security in Horseshoe stock.

The general rule is that when a person sells his shares in the corporation he is entitled to payment and he is entitled to pursue whatever security may have been taken. However, there are some questions in the case which the district court has not resolved and, therefore, they are not properly before us at this time. The briefs raise some equitable matters as to whether the Pratts violated any fiduciary duties by their actions as officers and directors after the sale and whether the sale was an arm's length transaction. Also, the court below should determine questions such as the application of equitable subordination, if such questions have any merit in this case. These are definitely questions for the district court to consider and determine before this court can review them.

C. *Whether consolidation can be used to eliminate the guarantees made to ICB and the Pratts*

■■ The guarantees made to ICB and the Pratts of the various debtor corporations do not constitute a secured interest, even though ICB and the Pratts thought of the guarantees as additional security. Thus the *guarantee* by Horseshoe running to ICB entitled the latter to treatment as an unsecured creditor of Horseshoe. In the event that a creditor has claims against a number of debtor corporations growing out of the same transaction, it is entitled to receive only one satisfaction. If the debtor corporations are treated as separate entities and a creditor remains unsatisfied, the creditor

3. 6 Collier on Bankruptcy ¶ 9.10 (14th ed.).

4. *Consolidated Rock Products Co. v. Du Bois,* 312 U.S. 510, 520-21, 61 S.Ct. 675, 85 L.Ed. 982 (1941); *Northern Pacific Ry. v. Boyd,* 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931 (1913).

5. 6 Collier on Bankruptcy ¶ 9.10 (14th ed.).

6. *In re Continental Vending Machine Corp.,* 517 F.2d 997, 999, 1001-02 (2d Cir. 1975), *cert. denied,* 424 U.S. 913, 96 S.Ct. 1111, 47 L.Ed.2d 317 (1976).

is entitled to have any guarantees considered as claims. Once the consolidation has been ordered the subject guarantees, which represent multiple claims, are necessarily eliminated. Therefore, an unsecured creditor has only one claim per transaction to be satisfied from the pooled resources. The court was not authorized to eliminate the guarantees running to ICB and the Pratts absent compelling equitable reasons for doing so. It would depend on a consolidation as well. This now does not loom as a likely solution.

D. *Was the trial court justified in the present circumstances in ordering the consolidation of the debtor corporations?*

We say no. The district court ordered the consolidation because common control was present, because the factors set forth in *Fish v. East, supra,* were present to a considerable degree, and also because overwhelming accounting difficulties were present.

There is statutory authority to support consolidation of debtor corporations in Chapter X reorganization proceedings. *See* 11 U.S.C. § 616(10). However, such disregard of the separate corporate entities is not the general rule. Consolidation has been used primarily when necessary to avoid fraud or injustice, but not for the purpose of promoting either or both.[7]

Courts have been reluctant to consolidate related corporations due to the possibility of creating an unfair program from the standpoint of creditors who have dealt with a corporation having a surplus or who have dealt solely with one debtor without knowledge of there being a relationship with others. This is what caused the district court here to indicate that there would be some kind of recognition or priority for those creditors who relied on the separate entity with which they dealt.

■ The power to consolidate authorizes the court to pierce the several corporate veils and to disregard the existence of the separate corporate entities. Thus where a corporation is a mere instrumentality or alter ego of the bankrupt corporation, with no independent existence of its own, equity would favor disregarding the separate corporate entities. It is, of course, proper to disregard a separate legal entity when such action is necessary to avoid fraud or injustice. The decision of this court in *Fish v. East, supra,* does not demand a different result. The trial court was of the opinion that *Fish* controlled and that it not only authorized but demanded a consolidation. We must disagree. *First, Fish* was quite different from this case, for there the insolvent parent organized the subsidiary as a front to raise money from public subscription in order to finance the parent. It is noted in the opinion that the purpose of organizing the subsidiary was to hinder and delay creditors.

*Second,* the two corporations were and had been operated as a single enterprise. The property of the two was hopelessly commingled and funds raised by the subsidiary were used indiscriminately by both corporations.

*Third,* the subsidiary did not have a corporate existence outside the corporate family.

*Fourth,* by the time of the bankruptcy, the subsidiary had no personnel of its own.

*Fifth,* one individual dominated and managed both corporations. For several years, that person had enough proxies to name the board of directors of both corporations.

*Sixth,* the directors and officers of the subsidiary did not act independently and in the interest of the subsidiary.

■ This court noted, in concluding that the parent and the subsidiary should be treated as one, the following relevant factors (not all of which were present in the *Fish v. East, supra,* facts): That the parent owned all or a majority of the capital stock

---

7. *Maule Industries v. Gerstel,* 232 F.2d 294, 297 (5th Cir. 1956); 4A Collier on Bankruptcy ¶ 70.-15 (14th ed.).

of the subsidiary; that there were common directors and officers; that the parent corporation had financed the subsidiary; that the parent corporation was responsible for the incorporation of the subsidiary; that the subsidiary had grossly inadequate capital; that the parent company paid the salaries or expenses or losses of the subsidiary; that the subsidiary had no independent business; that in the papers of the parent corporation, the subsidiary was referred to as such or as a department or division; that the directors and executives of the subsidiary did not act independently but took direction from the parent; and that the formal legal requirements of the subsidiary as a separate and independent corporation were not observed.

It is to be noted further that the opinion in *Fish* recognized that the creditors of the subsidiary might have the right to elect their own trustee. *Id.* at 199. The opinion also recognized that creditors of the subsidiary might be entitled to be paid by the subsidiary in preference to claims against the parent. Thus creditors who were innocent victims were entitled to have their rights recognized.

The objecting creditors here argue that neither Horseshoe nor Delta is an instrumentality under the *Fish v. East, supra,* tests, and that consolidation would not be appropriate even under the rule of that case. It is true that the trial court said that enough *Fish v. East, supra,* factors were present to support the consolidation. It did not, however, specify as to which of the factors were present. The factors which are absent render this case vastly different and suggest that it is undesirable to have all the corporations treated as one and administered as one.

The strong factual difference here is that neither Horseshoe nor Delta was organized by the Gulf South group fraudulently as in *Fish v. East, supra.* Horseshoe was originally incorporated by the Pratts and was engaged in real estate development prior to the sale to the Gulf South group. A Gulf South affiliate originally organized Delta, but the assets were acquired by purchase from an individual. Both Horseshoe and Delta had substantial net worth when they were acquired by this group. These are the only two corporations in the family that have consistently been profitable. Each had its own personnel, and each paid its own salaries and expenses. Neither of these corporations were regarded as a department or division of the parent.

Although the intercompany transactions were complex, the record does not indicate that the assets of the entities were hopelessly commingled. The record does not indicate which of the corporations benefitted from the intercompany transactions or provided financing for others on arm's length terms. Both Horseshoe and Delta were wholly-owned subsidiaries, but each had its own officers who were not officers in any of the upstream related corporations. The Pratts did make the day to day decisions on the development operations, but it is questionable whether they had any decision making authority on the financing. The Pratts remained on Horseshoe's board of directors after their sale, but the board was controlled by representatives from the upstream corporations. Delta did not have a functioning board of directors.

Horseshoe had some characteristics of a separate legal entity. Its business was located in Arkansas and its books, records and bank accounts were there. It was audited by a national CPA firm until the year prior to Chapter X proceedings, and the minutes were signed by its directors. Delta's business and personnel were located in Louisiana, as were its books and records. The outward appearance of both of these companies was that they were independent, so we fail to see that *Fish* is binding in this situation, and certainly it would not be binding on the creditors of Horseshoe and Delta. Had the district court determined who would benefit from a consolidation order from the standpoint of the conditions of the corporations, we might be in a situation in which it could be justified, but such is not the case.

We have mentioned previously that the difficult accounting problems were given as

a really important reason for the court's action. The Second Circuit in *Chemical Bank New York Trust Co. v. Kheel*, 369 F.2d 845, 847 (2d Cir. 1966), considered the difficulty of accounting as a factor. Unlike here, the interrelationships were so strong that great expense (in order to bring about an unscrambling) threatened any recovery.

In a subsequent case, the Second Circuit allowed consolidation of unsecured creditors of the corporate group where the reorganization plan was fair and equitable. *In re Continental Vending Machine Corp.*, 517 F.2d 997, 1001 (2d Cir. 1975), *cert. denied*, 424 U.S. 913, 96 S.Ct. 1111, 47 L.Ed.2d 317 (1976).

## COMMENTS AND RULINGS

Undoubtedly there are difficult financial and accounting problems here, but that they are not insurmountable tends to be shown by the settlement that was reached with Standard Life and Accident Company, an affiliated corporation. Along the same line, the court has determined that the stock of Gulf South Corporation and Intertek Financial Corporation is worthless, whereby the shareholders should not participate in the reorganization.[8]

In the present posture, however, there is a great shortage of information as to the condition of the several corporations in this group and as to the conditions between corporations. Much more information is necessary before final decisions can be made. Accounting studies are needed in order to gain enough facts to be able to determine the equitable, fair and legal course to follow. It may be, for example, that some of these corporations, once the facts are known, do not qualify for reorganization. Indeed the only candidates that show promise as Chapter X reorganization material are Horseshoe and Delta and perhaps their subsidiaries. We emphasize that these cannot be the final words because we do not have the facts in the record before us. We mentioned that accounting investi-

gations, evaluations and reports are essential if there is to be a determination as to which companies are viable in terms of Chapter X reorganization. The trial court hesitated to spend the money necessary to make these studies. It may well be that there cannot be detailed, certified audits, but there can be some accounting studies, comparisons and evaluations together with reports to the court. If this is the best that can be obtained, this step should be taken. Action here is wholly dependent on the underlying facts so, therefore, this ought to be the first step. For example, there is insufficient information to show whether the subsidiaries have been injured by upstream control. The equitable principle is that a parent will not be allowed to dominate and control the subsidiaries so as to escape responsibility and liabilities, particularly in conjunction with a final reorganization. *See Consolidated Rock Products Co. v. Du Bois*, 312 U.S. 510, 522, 61 S.Ct. 675, 85 L.Ed. 982 (1941). Therefore, the state of these intercompany accounts must be ascertained to the extent that it is possible. It may be determined after this has been found out that it would be more equitable to subordinate intercompany liability to the rights of the creditors.

If there is to be a consolidation, it has to await the answers to a number of questions, some of which have been expressed above. Also clear is the fact that consolidation is not to be used as a means of avoiding valuation searches. It is at least possible that the consolidation of unsecured creditors may be an appropriate solution for some of the debtor corporations, but in no event can secured creditors be deprived of their secured status as part of a consolidation program, because this sweeping process has a tendency to ignore both the legal and equitable rights of these creditors.

In sum, then, we say consolidation is not to be used to defeat the security of secured creditors or to reduce a secured creditor to the status of an unsecured creditor.

---

8. Apparently the district court has not determined that these two corporations are so worthless that their assets and liabilities should be excluded from a reorganization plan. Thus creditors of these two corporations would be entitled to participate in the reorganization.

Secondly, consolidation of unsecured creditors is premature because there are many fundamental questions which have not been answered and cannot be answered from the record. Third, more information on a separate entity basis is essential in order for the district court to determine the value of the stock of some of the corporations, including, of course, Horseshoe and Delta. This information will determine which, if any, of the corporations are to be included in a Chapter X reorganization. Fourth, the state of the intercompany accounts are to be determined as a prerequisite to what would constitute an equitable and feasible plan of reorganization. These and other questions have to be addressed and resolved either before or in conjunction with a determination of whether consolidation of unsecured creditors is appropriate.

It is clear then that at the present time, the order of consolidation must be vacated. Based on our conclusion that the trial court abused its discretion in ordering consolidation, the cause should be and the same is hereby remanded for further proceedings, to be carried out with convenient speed.

Appendix to follow.

APPENDIX

*Merged into parent December 31, 1975.